J. T. FUTCH, TRADING UNDER THE FIRM NAME AND STYLE OF FUTCH BROS., *Appellant,* v. N. ADAMS AND R. W. ADAMS, TRADING UNDER THE FIRM NAME AND STYLE OF ADAMS BROS., AND P. J. BECKS, *Appellees.*

| | |
|----|-----|
| 47 | 257 |
| 49 | 366 |
| 47 | 257 |
| 50 | 383 |
| 51 | 469 |
| 47 | 257 |
| 56 | 842 |
| 47 | 257 |
| 58 | 516 |

1. An appeal from interlocutory decrees, some of which were entered more than six months prior to the entry of appeal, will entitle the appellant to have reviewed the propriety of the decrees entered within six months prior to the entry of appeal, but not those entered more than six months prior to the entry of appeal.

2. A demurrer to the whole bill should be overruled, if the bill makes any case for equitable relief.

3. The office of a proviso is to restrain the enacting clause; to except something which would otherwise be within it or in some manner to modify it; and where it follows and restricts an enacting clause general in its scope and language, it is to be construed strictly and limited to objects fairly within its terms.

4. The proviso in section 2, chap. 4955, act approved May 30th, 1901, has reference to contracts made with lessees, tenants or operators for the erection or repair of buildings, mills, distilleries and manufactories leased or otherwise controlled by them, and not to contracts made with the owner of the property or to contracts for labor or material made with one who contracts with the owner to erect or repair the building, mill, distillery or manufactory.

5. The liens given by section 1, chap. 4955, act approved May 30th, 1901, may be enforced by bill in equity under sections 1510-1744, Rev. Stats. 1892, as the summary remedy provided by the statute giving the liens is not exclusive.

This case was decided by the court *En Banc.*

Appealed from the Circuit Court for Columbia county.

The facts in the case are stated in the opinion of the court.

*J. M. Rivers* for appellant.

*Roberson & Small* for appellees.

47 Fla.—9

CARTER, J.—On March 22, 1902, appellant filed his bill in equity in the Circuit Court of Columbia county against appellees, praying for the enforcement of an alleged material man's lien.   The defendants filed their demurrer to the bill which was sustained and leave given complainant to amend, August 14, 1902.   Complainant filed his petition for a rehearing which the court denied September 19th, 1902, and the complainant was again given leave to amend the bill.   On October 6, 1902, complainant filed his amended bill which alleges in substance that prior to June 7, 1901, Becks entered into a contract with Adams Bros. to erect a two story brick building on a certain described parcel of land in the town of Lake City in said county; that Adams Bros. were and still are the owners of said parcel of land; that on June —, 1901, Becks promised and agreed to buy a large quantity of bricks from complainant to be used in constructing said building, at a certain stated price then agreed upon;  that payments therefor were to be made as work on the building progressed and as Adams Bros. should pay Becks upon his contract for constructing the building; that complainant, in pursuance of said agreement with Becks, furnished a large amount of bricks at various times between the 2nd day of July and the 3rd day of December, 1901, an itemized statement of which was attached to the original bill; that said bricks so furnished were all used in the construction of said building;  that the prices charged therefor were reasonable;  that there remains due and unpaid therefor $717.31, with interest from December 2, 1901; that Becks having failed and refused to pay the amount due, complainant, on January 18, 1902, notified Adams Bros. by letter of such failure and refusal and that complainant would hold a lien on the building;  that Adams Bros. on January 20th, 1902, refused to pay same; that on February 12, 1902, complainant filed with the clerk of the Circuit Court of Columbia county his duly verified notice of lien on said building, and served a true copy on Adams Bros.;  that the notice filed with the clerk was recorded

February 12, 1902; that by reason of the defendants' failure to pay the amount due, complainant was compelled to bring suit and to employ counsel for that purpose, and that $250 is a reasonable attorney fee for the services of such counsel. The bill prays that defendants be decreed to pay complainant $717.31, the sum due for bricks, and $250 for attorney fees; that the premises described in the bill be decreed subject to a lien therefor, and in default of payment of said amounts within a short day to be fixed by the court, that the premises be sold to satisfy the amount so due, with attorney fees and costs of court, and that defendants be barred and foreclosed of all right and equity of redemption therein.

The defendants filed their demurrer to this amended bill stating therein the following grounds:

1. That there is no equity in the bill.

2. That the bill fails to allege that complainant gave notice to Adams Bros. at the time of making the alleged contract with Becks for brick to be used in constructing the building.

3. The bill does not allege that complainant complied with the statute requiring notice to be given Adams Bros., the owners of the building, at or before the time of furnishing the material to be used in the construction of the building.

4. The bill is vague, indefinite and insufficient.

This demurrer was sustained January 7, 1903, and the complainant given leave to amend. Thereafter, on April 3, 1903, complainant appealed.

The entry of appeal embraces not only the order sustaining the demurrer to the amended bill, but the orders sustaining the demurrer to the original bill, and denying the petition for a rehearing, and each of these interlocutory orders is assigned as error. No final decree has been entered in the cause, and under the previous rulings of this court, an appeal from interlocutory decrees, some of which were entered more than six months prior to the entry of

appeal, will entitle the party appealing to have reviewed the propriety of the decree entered within six months prior to the entry of appeal, but not those entered more than six months prior to the entry of appeal. *Ray v. Frank,* 44 Fla. 681, 32 South. Rep. 925; *Mattair v. Furchgott,* 44 Fla. 620, 32 South. Rep. 925; *Steinberg v. Richbourg,* 45 Fla. 589, 33 South. Rep. 521. The orders sustaining the demurrer to the original ·bill and denying the petition for a rehearing having been entered more than six months prior to the entry of the appeal in the present case, can not under the rule stated be reviewed, as the appeal is not from a final decree, but from interlocutory decrees only.

It appears from the allegations of the amended bill that a small portion of the bricks was furnished prior to the time that chap. 4955, act approved May 30th, 1901, took effect, and it is claimed that as to the amount due therefor no lien exists, because notice to Adams Bros. is not alleged to have been given by complainant in compliance with the requirements of chap. 4143, act approved June 3rd, 1893. Whether this is so or not, we need not now determine, as it is well settled that if a demurrer is filed to the whole bill, —which is the case here,—and the bill makes any case for equitable relief the demurrer will be overruled. *Dunham v. Stephenson,* 41 Fla. 112. See, also, *Thompson v. Maxwell,* 16 Fla. 773; *Louisville & Nashville R. R. Co. v. Gibson,* 43 Fla. 315. We think the bill is properly brought to enforce a lien for the bricks furnished after the act referred to took effect, and the following discussion will be confined to that portion of the debt.

The first and fourth grounds of the demurrer to the amended bill are general and the real question presented is stated in the second and third grounds. In order to determine ·this question it will be necessary to construe chap. 4955 above referred to, as most of the bricks furnished were supplied after that act took effect. The 1st and 2nd sections of that act which are here copied from the original

on file in the office of the Secretary of State, as the printed copy in the Acts of 1901, is inaccurate, read as follows:

"Section 1. That mechanics and all other persons performing labor or furnishing materials for the construction or repair of any building, or who may have furnished any engine or other machinery for any mill, distillery or manufactory, shall have a lien, separately and jointly, upon the building, mill, distillery, manufactory or machinery which they may have constructed or repaired, or upon any building, mill distillery, manufactory or machinery for which they may have furnished material of any kind, and on the interest of the owner in the lot of land upon which said building, mill, manufactory, distillery or machinery may stand, to the extent of the value of any labor done or material furnished, or both.

Sec. 2. It shall be the duty of any person who may contract to build or repair any house, mill, distillery, manufactory, machinery or other building, or who may sub-contract for all or any part of the construction or repair thereof, to furnish the person or persons having such building constructed or repaired, or in his or their absence, then his or their authorized agent, a correct and complete list of the names of the sub-contractors, mechanics and laborers to be employed in the building or repair of such house or other buildings, the names of all persons who may have furnished materials for the construction or repairs of such buildings, distillery, manufactory or machinery, as well as the names of all the persons acquiring a lien upon such house, mill, distillery, manufactory or machinery under sec. 1 of this act, and shall furnish a receipt in full for all claims or demands for work done or material furnished upon or for, or a release of such building, mill, distillery, manufactory or machinery from any claim against the same, for any such work or labor done or material furnished, and any contractor or sub-contractor failing or refusing to furnish the lists of names provided for by this section, such failure or refusal may be plead in bar of such contractor's or sub-

contractor's recovery against the owner or owners of such building, unless it can be shown that the claims of all sub-contractors, mechanics, laborers, and material men, for labor done or material furnished for the construction or repairs of such building, mill, distillery, manufactory or machinery, has been fully paid off and discharged; provided further, that when any contract shall be made with any other person than the owner of the property, before a lien can be had against such property, the contractor shall give notice in writing to the owner of the property he is about to perform labor upon such property, and that he intends to hold a lien upon the same for any unpaid sums of money for such labor or materials."

It is insisted by appellees that the *proviso* in the 2nd section required complainant to give notice in writing to Adams Bros. that he was about to furnish material to Becks, and that he intended to hold a lien upon the building for the price of same, before he furnished it, and that as such notice is not alleged to have been given, he acquired no lien. This appears to have been the opinion entertained by the Circuit Court. While the *proviso* is ambiguous and difficult to properly construe we do not think the construction suggested the proper one. The 1st section in very broad language gives to the laborer and material man liens upon the building and upon the interest of the owner in the lot of land upon which it may stand, to the extent of the value of the labor done or material furnished. The 2nd section imposes upon the person who contracts to construct or repair buildings, or who sub-contracts for all or any part of the construction or repair thereof, the duty of furnishing the person having the building constructed or repaired a correct and complete list of the names of the sub-contractors, mechanics and laborers to be employed, the names of all persons who may have furnished materials as well as the names of all persons acquiring a lien upon the building under sec. 1, and to furnish receipts in full for, or releases of the building, from claims for work done or material

furnished, and authorizes the owners of the building to plead the failure to comply with the duty of furnishing lists of names, in bar of the contractor's or sub-contractor's recovery against him, unless it can be shown that the claim of all sub-contractors, laborers and material men have been paid off and discharged, and then concludes with the *proviso*. It can hardly be supposed that having given unqualified liens by sec. 1, and made it the duty of the contractor or sub-constractor to give notice to the owner that the material man is furnishing or has furnished materials, and authorized the owner to plead such failure in bar of recovery on the part of the contractor or sub-contractor, that the legislature intended by the *proviso* to impose a duty upon the material men to give an additional notice to the owner. The 13th section of the act expressly repeals chap. 4143, act approved June 3, 1893, the sole purpose of which latter act was to require notice to be given by material men of materials furnished in order to acquire a lien. The language of the *proviso* is applicable to persons who contract for the construction or repair of buildings and who are "about to perform labor upon" property—not to persons who are about to perform labor for or to furnish material to one who has contracted with the owner. We think it has reference to contracts made with lessees, tenants or operators for the erection or repair of buildings, mills, distilleries and manufactories leased or otherwise controlled by them, and not to contracts made with the owner of the property or to contracts for labor or material made with one who contracts with the owner to erect or repair the building. The owner is protected in making his payments to the contractor by the provisions of the section containing the proviso, and the proviso is not incorporated in the section giving the lien, but in the section requiring the contractor to give notice. The office of a *proviso* is to restrain the enacting clause; to except something which would otherwise be within it, or in some manner to modify it, and where it follows and restricts an enacting clause, general in

its scope and language, it is to be construed strictly and limited to objects fairly within its terms. *Southern Bell Telephone & Telegraph Co. v. D'Alemberte,* 39 Fla. 25, 21 South. Rep. 570. In the statute under consideration it takes out of the general rule provided for, *viz*: that notice must be given by the contractor or sub-contractor, those cases in which the contract is not made with the owner but with a lessee, operator or tenant of the property, and requires the contractor who seeks to hold a lien upon the property in such cases to give notice himself, to the owner.

Some contention seems to have been made in the court below that complainant could only enforce his lien under the statute referred to by the special proceedings provided by the act. The statute provides a summary remedy by legal proceedings, but it contains no language indicating that such remedy is exclusive. It provides that the liens may be enforced in the manner there stated, but there is nothing in the act indicating an intention to repeal sections 1510 and 1744, Rev. Stats. of 1892, which constitute ample authority for enforcing the lien by bill in equity, and therefore the statutory remedy must be considered merely cumulative. See *Hathorne v. Panama Park Co.,* 44 Fla. 194, 32 South. Rep. 812; *West, Wiggs & Co. v. Grainger,* 46 Fla. 257, 35 South. Rep. 91.

The order sustaining the demurrer to the amended bill is reversed and the cause remanded for further proceedings.

HOCKER, SHACKLEFORD and WHITFIELD, JJ., concur.

COCKRELL, J., dissents.

TAYLOR, C. J., absent on account of sickness.